(No. 33347.— )

NTINA PETROPOULOS, Appellant, *vs.* THE CITY OF CHICAGO *et al.,* Appellees.

*Opinion filed March 24, 1955.*

FRANKLIN J. STRANSKY, MAURICE J. NATHANSON, and FRED J. GINSBURG, all of Chicago, for appellant.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and CLAUDE E. WHITAKER, of counsel,) for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Appellant, Ntina Petropoulos, brings her appeal to this court from a judgment of the superior court of Cook County dismissing her suit for declaratory judgment and incidental relief. Appellant, hereinafter referred to as plaintiff, attacks the validity of certain zoning ordinances of the city of Chicago in respect to her vacant real estate located at the northwest corner of Foster and Cicero Avenues in the city of Chicago. The recommendations of the master in chancery, who conducted lengthy hearings, were favorable to plaintiff. The defendant city's exceptions to the master's report were sustained and the lower court entered judgment in accordance therewith.

Plaintiff alleges her fee simple ownership of certain vacant lots, having approximate frontage of 100 feet on Foster Avenue and 125 feet on Cicero Avenue, both of said avenues being intensely travelled by vehicular traffic. She then alleges various business and commercial uses in the immediate vicinity of the subject property. The property in question is within an area zoned by the 1923 Chicago zoning ordinance, as amended December 3, 1942, as an exclusive single-family residence district. Plaintiff alleges her desire to construct a gasoline filling station on her property, and complains that the effect of the restricted use as applied to her property is unconstitutional under both State and Federal constitutions. Plaintiff complains that the requirement of the zoning ordinances compelling her to obtain consents from owners of neighborhood property in order to maintain a business use on her said property is in effect a confiscation of her property. The defendant city's answer generally denies the material allegations, and issue was joined.

The record in this case reveals that plaintiff filed her action February 4, 1953. She acquired the subject property August 6, 1931, when it was located within an area

zoned for apartments. December 3, 1942, the area was rezoned for single-family use. The registrar of titles of Cook County was joined as a party defendant merely because the property is registered under the Torrens Act.

The evidence in this case conclusively reflects the following facts: Cicero Avenue extends north and south and Foster extends east and west. At the intersection in question Cicero Avenue is approximately 100 feet wide and Foster Avenue is approximately 66 feet wide. Immediately to the north of Foster is Berwyn Avenue and next is Balmoral. Immediately to the south of Foster is Carmen, then Winnemac and then Argyle. Immediately to the east of Cicero is Keating and immediately to the west are La Cross, then Lamon, La Porte and Lawler. Elston Avenue runs through the area in a northwesterly and southeasterly direction intersecting Cicero Avenue at a point approximately one block south of Foster and intersecting Foster at approximately one and one-half blocks west of Cicero.

The particular block wherein the subject property is located is bounded by Cicero on the east, Foster on the south, La Crosse on the west, and Berwyn on the north. A newly built residence, facing La Crosse, is on the northeast corner of La Crosse and Foster. (There are two new homes on Foster between La Crosse and Lamon and two new homes are presently being built in the same area.) In the block in question 24 single-family residences face west on La Crosse; many of the homes have garages on the rear parts of the lots. Facing east on Cicero all lots are vacant with the exception of a residence approximately 400 feet north of plaintiff's property. The lots facing Foster are vacant with the exception of the said residence on the northeast corner of Foster and La Crosse. The block immediately to the west is occupied by homes which front on La Crosse and Lamon. The only exceptions are a few vacant parcels fronting on Lamon, one vacant parcel front-

ing on La Crosse and an entire series of vacant lots fronting on Foster. In the block immediately to the north all the lots fronting on Cicero are vacant. The block in question has a 16-foot alleyway running north and south between the lots fronting on La Crosse and Cicero; there is also a 16-foot alley running east and west and to the rear of all of the lots fronting on Foster.

A large Texaco service station is located on the southwest corner of Cicero and Foster and immediately to the south of this station there is a hamburger and sandwich shop. On the southeast corner of the same intersection there is located a Standard Oil filling station. At each of the corners of the intersection there are operating 4-lane automatic traffic signals. Foster and Cicero at this intersection and in the immediate vicinity, and other streets and highways in the immediate vicinity, are very heavily traveled by all types of vehicular traffic. On the southwest corner of Foster and La Crosse is located the Holy Trinity Slovak Lutheran Church. There are residential uses on both east and west sides of La Crosse, on the north side of Berwyn, and south side of Balmoral. There are residential uses on the west side of Lamon north of Foster, on both sides of La Porte north of Foster, and on both sides of Berwyn from Lamon to Lawler. There are nonresidential uses at the Elston and Cicero intersection. At the Elston and La Porte intersection there is a filling station and near the intersection of Elston, La Porte and Foster there is an automobile repair and welding shop. On Elston northwest of Cicero and Elston are located stores, and a filling station is situated at the northwest corner of Cicero and Elston. At the northeast corner of the Cicero and Elston intersection another filling station is located. Certain industrial uses of nearby property were also shown in the evidence.

It is manifest that both Cicero and Foster are major traffic arteries accommodating large masses of motor traffic

for the northerly suburban area of Chicago. Elston is also a major highway and there is an entrance to the Edens Super Highway off of Cicero Avenue approximately two blocks north of the subject property. The traffic situation is the undoubted cause of the failure to build residences on the north side of Foster and on the west side of Cicero in the block in question. The record shows that in a period of 22 years the only residence built on Cicero north of Foster for an 800-foot distance is the lone dwelling above referred to.

Witnesses for plaintiff, who testified that the highest and best use of her property would be for the construction and operation of a filling station, fixed the value for residence purposes at 10 per cent of the value for filling station purposes—$30 to $40 per front foot as compared to $400 to $500. A witness for defendant city testified that the highest and best use for this property was residential. He did not testify as to comparative values of the property. Many of the residents in the neighborhood were called to testify on behalf of said defendant and each understandably objected to the use of plaintiff's property as a filling station.

We have carefully examined all of the testimony in the record, together with the maps, plats, photographs and exhibits (including traffic counts) and we are of the opinion that the conclusions of the master in chancery were amply supported by proof and that his recommendations were in accordance with the law of this State as concerns the particular facts of this case. The record makes it quite manifest why it would be most difficult to sell property in this particular block fronting on either Foster or Cicero for residential purposes with expectation of a reasonable return for the value of the property. To place a legal restriction on the use of such property to the extent that the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property. The law has always favored the free and unfettered use of a man's

property subject to reasonable limitations. That reasonable restrictions and limitations can be placed upon the use and sale of one's property is unquestioned. However, when such restrictions and limitations, whether fixed by contract of the parties or by legislative action, are unreasonable, arbitrary and confiscatory a court of equity will intervene to grant appropriate relief.

This court has consistently held that in order to sustain the validity of zoning ordinances there must be a reasonable relation between the public safety, comfort and welfare and the restrictions resulting from the particular zoning ordinances. Zoning ordinances are presumed to be valid unless clearly shown to be otherwise. Although a zoning ordinance may be valid in its general aspect, yet as to a particular state of facts involving a particular piece of property it may be so clearly arbitrary and unreasonable as to result in confiscation in violation of the constitutional rights of the owner of the property in question. (*Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) Where the gain to the public is small compared to the hardship imposed upon the property owner, no valid basis for an exercise of the police power exists. *(People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321.) In determining whether the confiscation of property rights by a zoning ordinance is unreasonable and confiscatory, in violation of the pertinent provisions of the Federal and State constitutions, the degree in which the values incident to the property are diminished by the restrictions must always be considered in connection with the facts of the particular case. *Midland Electric Coal Co.* v. *County of Knox,* 1 Ill. 2d 200.

The fundamental principles concerning judicial guides for decision in zoning cases have been reiterated in many of the opinions of this court. (See *Hannifin Corp.* v. *City of Berwyn,* 1 Ill. 2d 28, and *People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill. 2d 350.) When tested by these

standards, the facts in the instant case compel our recognition of the lower court's error in its refusal to accept and follow the master's recommendations. We therefore find and conclude that the particular zoning ordinances of the city of Chicago as concern the subject property are unreasonable, arbitrary and void, result in the taking and the damaging of plaintiff's property for public use without compensation, deprive her of her liberty and property without due process of law, and deny to her the equal protection of the law in contravention of the fifth and fourteenth amendments of the constitution of the United States, and sections 2 and 13 of article II of the constitution of the State of Illinois. We further find and conclude that the restrictions in the Chicago zoning ordinance, as amended, insofar as they deny to plaintiff's property the use for gasoline service station purposes, are not necessary to the end that adequate light, pure air, safety from fire and other dangers may be secured; nor to the end that taxable value of any land or building in the area may be conserved; nor that congestion (in any appreciable degree) in the public streets may be lessened or avoided; nor that the public health, safety, comfort, morals or general welfare be promoted, as provided in section 73-1 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1953, chap. 24, par. 73-1,— statutory authority granting municipalities the right to enact and enforce zoning ordinances regulating use of land and buildings.) In view of our above-expressed conclusions we deem it unnecessary to discuss other points urged by plaintiff.

For the foregoing reasons the judgment of the superior court of Cook County is reversed and the cause is remanded with directions to enter judgment in accordance with this opinion.

*Reversed and remanded, with directions.*