(No. 37056.—

ELAYNE D. TRENDEL, Appellee, *vs.* THE COUNTY OF COOK, Appellant.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

DANIEL P. WARD, State's Attorney, of Chicago, (RONALD W. OLSEN, RONALD BUTLER, and THOMAS A. HETT, Assistant State's Attorneys, of counsel,) for appellant.

CHARLES D. SNEWIND, and CROWLEY, SPRECHER, BARRETT & KARABA, of Chicago, (ROBERT A. SPRECHER and JOHN P. MURRAY, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This is a direct appeal by the defendant County of Cook from a declaratory judgment of the circuit court holding a county zoning ordinance void as applied to certain property owned by plaintiff Elayne D. Trendel. The trial judge has certified that the requisite public interest is involved, and

the sole issue here is whether the zoning ordinance is an arbitrary exercise of the police power.

The subject property, owned by plaintiff nine years, comprises approximately 10 acres within an unincorporated area of some 130 acres in Cook County that is surrounded by the city of Des Plaines. The entire unincorporated area is zoned for single-family dwellings on minimum lots of 10,000 square feet. The subject site itself is located in approximately the center of a predominantly vacant area between Mannheim Road on the east and Wolf Road on the west, about 1500 feet from each of those streets. It is an elongated tract, bounded on the south by 362 feet fronting on Oakton Avenue, and extending north 1300 feet to its northern boundary on Forest Avenue, a street in the city of Des Plaines. The site has been used for truck gardening, an accepted use under this zoning, for the past 20 years, and has on it, facing Oakton Avenue, a single-family frame farmhouse about 40 years old.

With respect to the uses of the surrounding area, it appears that to the west the property is used predominantly for truck gardening. There are two nonconforming greenhouse operations with five or six greenhouses each. One of the operations is over 500 feet west and abuts a new development of single-family homes. Further west, between the subject property and Wolf Road, along Oakton Avenue, there are 13 frame or brick single-family dwellings, some old and some new.

To the east, from the subject property to Mannheim Road, the area is predominantly vacant. However, about 1000 feet east there are two single-family homes fronting on Oakton Avenue, and four single-family homes near the corner of Forest Avenue and Mannheim Road. Fronting on Mannheim, 1500 feet east, are a garden supply store and a vacant building formerly occupied by an express company.

South of the subject property along the south side of Oakton Avenue, between Mannheim and Webster Lane, a

north-south street which, if continued north across Oakton, would extend through the center of the subject site, the use is truck gardening. Along Webster Lane itself, the use is for single-family homes, mostly of low economic value. Proceeding west along the south side of Oakton there are a few residences, one of which is converted into a small grocery store, and another is used partly as an office of a trailer court. There had been a tavern in a residence, but it is not clear whether it is still in existence. The trailer court itself is about 150 feet south of Oakton Avenue and southwest of the subject site. It is partially screened by landscaping and by the house, and extends southward with about 200 trailers. At the south end of the trailer park, the property is platted for single-family homes. On the corner of Oakton and Wolf Road is West Maine Township High School.

To the north of the subject property and facing Forest Avenue are single-family dwellings valued mostly at $23,-000 to $25,000, and some at $30,000. These homes were part of a development of 350 to 400 homes built in 1952. The area for some two miles northward is developed with single-family residences.

Plaintiff proposes to erect nine three-story buildings containing 16 apartments each, or a total of 144 units, half of which will be one-bedroom, and half two-bedroom apartments. The structures will comply with the code requirements for R-5 districts, which include 25-foot set back and sideyards of 10% of the width of the structures. The estimated cost of the site and buildings is $3,500,000.

Both plaintiff and defendant offered testimony of planning and real-estate experts in support of their respective contentions on the validity of the ordinance. Plaintiff's witness William S. Lawrence, a planning consultant, testified that in his opinion the highest and best use of the property is for the "garden-type" apartments; that more intensive use was more suitable in view of the nonconforming uses,

such as the greenhouses, the trailer court, the grocery store and the tavern, as well as the low economic value of the homes on Webster Lane. In his judgment single-family houses could not be economically developed, whereas rental units would upgrade the area and would not adversely affect the single-family homes to the north.

Plaintiff's witness Ronald J. Chinnock, a real-estate expert, experienced in appraising for major institutions, expressed a similar opinion as to the highest and best use of the site. He explained that the property could not be economically developed under the present zoning, since the houses would have to be priced at $30,000 to cover costs and profits, and could not be sold for that in the area under market conditions. He also stated that as presently zoned (R-4) the property has a value of $100,000, whereas under the proposed R-5 zoning it would have a value of $150,000.

Defendant's real-estate expert, Richard W. Manke, who had appraised and sold land valued at millions in the northwest suburban area for the past 16 years, stated that in his opinion plaintiff's proposed use would cause a depreciation amounting to over $184,000 in the surrounding properties, including the 10 homes directly north and the 20 homes northwest on Carol Lane, and the eight homes northeast on Second Avenue, as well as the adjacent vacant property, which could be developed under the present zoning into 32 lots. After itemizing the percentages and amounts of the individual property depreciation, he explained that this would be a small part of the overall depreciatory effect of rezoning, since it would lead to further multiple uses and downgrading of the surrounding vacant property in the unincorporated area, and also cause traffic congestion and school overcrowding.

In denying that the nonconforming uses had a deleterious effect making single-family development unsuitable, Manke called attention to the development of single-family homes built adjacent to the greenhouses in the vicinity and

elsewhere, and stated that the rapid development of the area would soon render the greenhouses economically obsolete. In his opinion the trailers would have no effect on the subject property since they were not parked on Oakton Avenue, but 150 to 200 feet southwest, and screened by landscaping and buildings. Moreover, they could conceivably be in view of only a small part of the development of the subject site, which would not face Oakton, but would, in view of the elongated shape of the land, extend north and south as a continuation of Webster Lane. He also pointed out that there were 14 or 15 new homes on the north side of Oakton, as close to the trailer park as the subject property, which were built subsequent to its establishment.

He testified further that the fair cash market value of the subject property as presently zoned was $66,000 or $6,600 an acre, in contrast to the $150,000 demanded by plaintiff, and that the highest price paid in the last year for single-family residental property in Maine Township was $7,500 an acre.

Similar opinions respecting depreciation of surrounding properties if plaintiff's proposed use were allowed and that the highest and best use of the subject property would be for single-family dwellings were given by defendant's witnesses George H. Kranenberg, a planning and zoning consultant, and Leroy J. Minnich, a real-estate expert who had sold approximately $12,000,000 of property in the Des Plaines area. Kranenberg explained that plaintiff's proposed use would constitute an intrusion of a high density use in an already established single-family area, which included both the incorporated and unincorporated territory.

Defendant's witness Rubin Pollack, who owned the land directly south of the trailer park, stated that his property was presently platted for single-family homes and for a school. Defendant also introduced the testimony of various residents in the adjoining area who purchased their

homes in reliance on the single-family zoning, including a resident whose $30,000 home was 150 feet from the subject site.

On the basis of substantially the foregoing evidence, the circuit court of Cook County held that the R-4 zoning classification was void and unreasonable as applied to plaintiff's property. On this appeal the county asserts, and plaintiff Elayne D. Trendel denies, that the R-4 zoning classification bears a substantial relationship to the public health, safety and general welfare, according to our criteria respecting the constitutionality of zoning ordinances.

Our case law is replete with restatements of the rules that a zoning ordinance is clothed with a presumption of validity; that courts will not interfere with the discretion of the legislative bodies charged with demarking the use of property, except where there is a clear abuse of discretion; and that the property owner challenging the ordinance has the burden of proof to establish that it bears no relationship to the public health, safety, morals or welfare. In determining that relationship, moreover, consideration must be given to such factors as the extent to which the value of the subject property is diminished as compared with the depreciation of other property if the restriction were removed; the reliance on existing ordinances; the suitability of the property for the zoned purpose; and the existing uses and zoning of surrounding property. *Elmhurst National Bank* v. *City of Chicago,* 22 Ill.2d 396; *Dalkoff* v. *City of Rock Island,* 17 Ill.2d 342; *Liberty National Bank* v. *City of Chicago,* 10 Ill.2d 137; *La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253, 256.

In considering these factors, while, according to plaintiff's evidence, the subject property has a value of $150,000 if rezoned as R-5, as compared to $100,000 under the present zoning, that fact is not sufficient to invalidate an ordinance, for this increased value is true in nearly every case where the use of private property is restricted by zoning

legislation. (*Bennett* v. *City of Chicago*, 24 Ill.2d 270, 273; *Bolger* v. *Village of Mount Prospect*, 10 Ill.2d 596; *Jacobson* v. *City of Evanston*, 10 Ill.2d 61, 68.) Moreover, that factor is counterbalanced and outweighed by the evidence, based on the market values in Maine Township, that the monetary depreciation to the homes to the north, west and east, as well as to the adjoining vacant area, would be in excess of $184,000; and that, in addition, the proposed use on plaintiff's 10 acres would lead to further multiple-dwelling units and downgrading of the zoning in the adjoining and predominantly vacant 130-acre unincorporated area.

With respect to the suitability of the classification, plaintiff's evidence that she has been unable to sell the property as zoned for nine years is hardly persuasive, since she has over the years demanded a purchase price some $50,000 more than even her expert witnesses claim it is worth. Failure to sell may well be due to overpricing, rather than unsuitable zoning.

The record shows that the surrounding area of Des Plaines is developed with single-family homes almost 100% and the logical source of similar development is this predominantly vacant unincorporated area developed substantially with conforming uses. It is evident that the existence of a few nonconforming uses does not *per se* invalidate zoning. (*Exchange National Bank* v. *County of Cook*, 25 Ill.2d 434, 441; *Gregory* v. *City of Wheaton*, 23 Ill.2d 402, 407.) Since the garden shop and vacant express company building are some 1500 feet east and face on Mannheim Road, they obviously would not affect the subject property. The two greenhouse operations on the west each have single-family residences adjoining them, and one of the operations is abutting an entire development of new single-family homes on 4th Street. Moreover, there is evidence that the greenhouse operations will become economically obsolete with the rapid development of the area and increasing worth of the land. Hence, the greenhouses can-

not be deemed grounds for voiding the single-family restriction.

In support of the alleged deleterious effect of the trailer court on the subject property, plaintiff relies upon the case of *Kuiken* v. *County of Cook*, 23 Ill.2d 388. There the subject property adjoined and was accessible only through the trailer park, and had no value for residential purposes unless additional properties could be purchased for access, consequently the single-family classification was deemed unreasonable.

In contrast, the trailer court here is located diagonally across Oakton Avenue, 150 to 200 feet southwest of the subject site, is partially screened by the landscaping and house in front of it, and would barely be visible to the subject site, which, in view of its elongated shape, would be developed with homes facing east and west as a continuation of Webster Lane. Under these circumstances, we perceive neither analogy to the *Kuiken* case, nor any deleterious effect which would render the single-family zoning unsuitable. That conclusion is further buttressed by the evidence that the property adjoining the south side of the trailer court has been platted for development with single-family dwellings, and by the evidence that 14 single-family dwellings, equally distant to the trailer park as the subject property, have been built on Oakton Avenue after its establishment.

Under our evaluation of the nonconforming uses herein, analogy may be made to the recent case of *Exchange National Bank* v. *County of Cook*, 25 Ill.2d 434. There the subject property, also in Maine Township and zoned R-4 for single-family residences, was within 600 feet of 31 new townhouses, beyond which was a parking lot and other commercial uses. To the north it adjoined a greenhouse; to the east were some single-family homes; and to the south there was a warehouse and several single-family dwellings. As in the instant case, it was argued that plaintiff would lose some $37,000 if the area were not rezoned for multiple

dwellings. The court, however, after noting the non-conforming uses and the lack of uniformity in the predominantly single-family area, concluded that since the cause presented a question of the desirability of the classification, on which reasonable persons may differ, it would not substitute its judgment for that of the legislative body. Consequently, the single-family classification was held constitutional.

As the zoning ordinance was sustained in that case, it should per force be deemed reasonable and valid here, where there are more cogent grounds favoring the restriction. Here there are no multi-family units in the area and the nonconforming uses are more limited and have no significant deleterious effect on single-family development. Moreover, since the subject site is in the center of the predominantly vacant unincorporated tract, the removal of the R-4 zoning restriction here would inevitably mean that the rest of the vacant area would be developed with multiple units or otherwise downgraded with incalculable depreciatory effects.

The controverted zoning ordinance protects against such depreciation and therefore obviously has a reasonable relationship to public welfare, even without the presumption of validity. The record shows at most that the suitability of the subject property for the present zoning is debatable. Therefore, it would be a violation of the aforementioned principles if, under those circumstances, a court substituted its judgment for that of the legislative body by invalidating the ordinance. Such action would not only rezone plaintiff's property but would, in effect, rezone the entire 130-acre unincorporated area.

It is, therefore, our opinion that the declaratory judgment of the circuit court declaring void the R-4 zoning as applied to plaintiff's property was contrary to law and must be reversed.

*Judgment reversed.*