EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF HOFFMAN ESTATES, Defendant-Appellee.—(BARRINGTON AREA COUNCIL OF GOVERNMENTS *et al.*, Intervening Defendants-Appellees.)

First District (3rd Division)   No. 62635

Opinion filed April 27, 1977.

Nathan Shefner, of Chicago, for appellants.

Hofert and Samelson, of Des Plaines (Edward C. Hofert, of counsel), for appellee Village of Hoffman Estates.

Tenney & Bentley, of Barrington (William J. Braithwaite, of counsel), for appellees Barrington Area Counsel of Governments and Marvin Dunteman.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County which dismissed their declaratory judgment action. Plaintiffs sought a declaration that the industrial zoning imposed on plaintiff's property by defendant was invalid. Plaintiff also unsuccessfully sought an injunction to restrain defendant from obstructing or interfering with plaintiffs' proposed multifamily usage of the subject property. The trial court granted to the Barrington Area Council of Governments and Marvin Dunteman, an owner of certain adjoining property, leave to intervene in the action. Both in the trial court and in this court, the intervenors have opposed plaintiffs' proposed use of the property and have adopted defendant's position in the matter.

In 1946, Nathan Shefner purchased 80 acres of land, the southern 52.7 acres of which is the subject of this lawsuit. In 1952, the entire parcel was placed in two trusts, and Shefner became the sole beneficial owner of both trusts. At the time of purchase, the entire parcel of land was located in an unincorporated area of Cook County. Its R-1 zoning at that time permitted one residence per five acres. The north 895 feet were subsequently incorporated into the village of South Barrington. The subject property was annexed by the defendant village of Hoffman Estates. Both portions of the entire parcel retained a form of residential zoning until 1974 when the parcel which had been annexed by defendant was zoned M-2 industrial.

The entire 80-acre parcel of land is bounded on the north by Mundhank Road. The only access to the subject property is from Mundhank Road onto a dirt road which runs south for 895 feet through the South Barrington portion to the subject property. The subject property is bordered on the west by a parcel of industrially zoned property and to the east by two parcels of industrially zoned property. All three parcels are in the defendant village. The property to the west and extending south beyond the south property line of the subject property is property similarly zoned M-2. The south portion of this property to the west has been developed by the Pfizer Drug Company to include a 258,000-square-foot warehouse. Marvin Dunteman, one of the intervenors, is the owner of the property to the west and north of the Pfizer property. The property immediately east of the subject property and similar in size was also zoned M-2 by defendant in 1974. This property is owned by a Mr. Rootberg who has not challenged the classification and is not a party to this suit. The property to the east of the Rootberg property extends south of the south line of the subject property and the Rootberg property and is

also zoned M-2. The land immediately south of the subject property is not in the village of Hoffman Estates and is zoned residential and used as a farm. The Northwest Tollway is the southern border of the farm and also the southern border of the Pfizer property and the property to the east of the Rootberg property. The property south of the tollway and immediately south of the Pfizer property and the residential farmland is an area known as the Barrington Industrial Park. This property is zoned M-1 industrial, a classification in the defendant's ordinance which is included in the broader M-2 cumulative zoning. To the north of the subject property and to the north of the Dunteman and Rootberg properties and the property to the east of Rootberg is vacant farm land, zoned residential, located in South Barrington. The Pfizer Drug Company installed water and sewer connections under the tollway, making available facilities which could be expanded to the subject property.

On February 9, 1970, a comprehensive plan for defendant was adopted, showing the subject property as industrial. This occurred, of course, prior to the actual rezoning in 1974. In 1972, Shefner approached the architectural firm of Holabird & Root requesting plans for a multiresidence complex of 490 units to constructed on the subject property. After obtaining the plans, Shefner and the architects held preliminary conferences in May 1972 with a number of defendant's public officials, including the mayor and village manager, in an attempt to ascertain the feasibility of the proposal. After viewing the diagrams, preliminary plans and information which had been submitted, the village manager commented that he could see no problems in connection with the plans. He also indicated that defendant was in the process of altering its multifamily development ordinances and that the Elk Grove ordinance was being used as a model.

In August 1973 Shefner met with defendant's mayor and trustees on two occasions for a presentation of his proposal. He was advised that the Plan Commission would be presented with all of the pertinent information. On September 6, 1973, plaintiff filed a formal application seeking a variation to permit construction of 150 one-bedroom units and 340 two-bedroom units. Each unit was to contain both enclosed and outdoor parking facilities. The proposed buildings were to cover approximately 20 percent of the subject property, with the remainder devoted to parks, roads, recreational and other necessary facilities.

Following public hearings on the matter, the Plan Commission on December 5, 1973, rejected the requested zoning. After hearing arguments on July 8, 1974, the board of trustees affirmed the Commission's decision. Previously, on May 22, 1974, the board ordered a public hearing before the Commission to examine the possibility of rezoning the subject property and the adjoining Rootberg property from

residential to industrial. Mr. Shefner received notice of this meeting and was in attendance. Subsequently, the Plan Commission recommended that the industrial zoning be approved. On August 26, 1974, this recommendation was adopted by the board of trustees. This declaratory judgment action ensued and the following evidence was adduced at trial.

Thomas Welch, an architect for Holabird & Root, testified for plaintiffs and estimated that site preparation costs for multifamily usage of the subject property would be approximately $632,000. Welch testified that a survey was obtained and that various studies on the soil, the topography, the forestation, and the general configuration of the land were conducted. From these studies, he concluded that the proposed multifamily plan was an appropriate use of the land, especially in view of the surrounding area. Industrial use of the subject property was rejected because of site cost considerations due to topography.

Richard P. Frame, Director of Civil Engineering for Holabird & Root, testified for plaintiffs and gave his opinion that only 30 percent of the subject property was suitable for industrial development. Frame had conducted his own investigation of the property and also had concluded that the roads leading to the property were insufficient for normal industrial traffic. He had no part in reaching the site preparation cost estimate of $625,000 but was aware of the process used in determining that figure. Because of time limitations no actual figures or measurements were made concerning the site cost computation for the subject property. The estimate was derived from Urban Land Institute Bulletins concerning projects in Missouri and Indiana. Frame had no way of verifying the accuracy of the figures.

James P. Foley, a real estate expert, testified for plaintiffs that the rezoning of the subject property in 1974 from residential to industrial doubled its fair cash market value from $530,000 to $1,060,000. He further stated that, assuming a $624,000 site preparation cost, the subject property would be worth $1,225,000 if zoned multifamily. He believed that, in accordance with the proposed plans of Holabird & Root, the highest and best use of the property would be multifamily. Foley stated that if the estimated site development cost of $624,000 would turn out to be significantly higher, the highest and best use of the property would not necessarily be multifamily.

Virginia Hayter, defendant's president, was called by plaintiffs as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) She discussed the meeting with Nathan Shefner at which he made his initial presentation. She recalled that the problem that no roadways existed and that roadways might have to go through a neighboring village was pointed out to Shefner. This problem would necessitate the consideration of some "hard and fast questions."

Ralph Martin, a real estate expert, testified for defendant and agreed with Foley that the subject property when zoned industrial was worth $1,060,000. He was of the opinion that its worth when zoned multifamily would be only $720,000. Martin concluded that the trend of development in the immediate area seemed to be manufacturing in nature and that the demand for industrial property was significant.

Gerald Estes, defendant's village planner, testified that he had advised defendant that the highest and best use of the subject property was industrial. The 1970 comprehensive plan had so designated the property primarily because the Cook County Forest Preserve had taken land south of the tollway which had been marked for industrial use. The instant area was the only vacant land available in the defendant village which could support industrial development. The community needed an expanded tax base and would derive significant tax benefits, as well as additional employment, from a heavy manufacturing complex. Estes stated that the road system would have to be expanded for either industrial or multifamily developments. He also referred to the inherent incompatibility of industrial and residential complexes, noting both the harsh environment of a manufacturing area and the problem of the proximity of children to heavy equipment and trucks. No public parks were within three miles of the subject property. The witness stated that the Barrington Industrial Park and the Pfizer Drug Company illustrated the trend toward industrial development in this area.

Eric Kant, an experienced developer of multifamily complexes, testified for defendant that he had developed such a complex approximately two miles south of the subject property. He stated that he had 15 percent vacancies, that sales were slow, and that construction of multifamily units had ceased even though additional land was available for development. He estimated that even with 100 percent occupancy the proposed plan would generate a $200,000 per year negative cash flow. He believed that portions of the project had been improvidently designed.

Thomas McCabe, a professional engineer, testified for defendant that he made an engineer feasibility study of the subject property to determine its suitability for both industrial and multifamily development. After two personal visits to the site and the study and preparation of cost-estimates, McCabe concluded that the land was industrially developable. He also believed that it would be more profitable to be developed industrially than as multifamily. He disputed the site cost calculations of plaintiffs' architects as not being thorough or relating to Illinois costs. His own estimates approximated costs for industrial development at 45 cents per square foot and for multifamily development as 65 cents per square foot or $1,501,850. The witness had experience with both industrial and multifamily complexes.

Michael Levin, a land planner for a private suburban firm, testified that he completed a cost revenue impact analysis for defendant revealing that the annual surplus revenues over expenses to be received each year by defendant from the multifamily alternative was projected at $44,572, while the surplus from an industrial usage was projected to be $104,304.

Plaintiffs presented two witnesses on rebuttal. Nathan Shefner testified that although the subject property had been advertised for sale since 1972 no inquiries had been made by parties contemplating industrial use of the property. John Holabird, Jr., an architect and partner in the firm of Holabird & Root, gave his opinion that plaintiffs' proposed plan constituted the highest and best use of the property. He had not reviewed the calculations of Mr. McCabe.

Plaintiffs contend on appeal that the industrial zoning classification of the subject property is unreasonable, capricious, arbitrary and confiscatory, and that the property is not suitable for industrial zoning and should be zoned multifamily. Plaintiffs also argue that defendant, in light of its officials' actions, is estopped from denying plaintiffs' application for rezoning.

■■ ■  A zoning ordinance carries a presumption of validity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to public health, safety, or welfare. (*Tomasek v. City of Des Plaines* (1975), 64 Ill. 2d 172, 354 N.E.2d 899.) Further, the legislative judgment also prevails where a fair difference of opinion exists concerning the validity of a zoning ordinance. (*Wehrmeister v. County of DuPage* (1957), 10 Ill. 2d 604, 141 N.E.2d 26.) In *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, 167 N.E.2d 406, the court referred to two factors, pertinent in the present case, to be weighed in determining the validity of a zoning ordinance:

> " * * * the care with which the community has undertaken to plan its land use development, and the evidence or lack of evidence of community need for the use proposed by the plaintiff."

■■  In viewing the exhibits and testimony adduced at trial, it is our judgment that plaintiffs have failed to establish that the zoning ordinance as applied is arbitrary and unreasonable. The land is included in a comprehensive plan establishing an industrial complex within the village. A good portion of the area has been rezoned from residential to industrial. Not one parcel has been rezoned for multifamily use.

It must be emphasized that, according to the expert testimony presented by both sides, defendant's rezoning of the subject property from residential to industrial has doubled the value of the land. Thus plaintiffs cannot present the usual argument that the value of the land has

been diminished as a result of the rezoning. The testimony was conflicting as to whether the property would be more valuable if zoned multifamily. A resolution of that conflict depends upon site preparation costs for which each side has given widely varying estimates. While the higher estimate of defendant's witness McCabe appears to be based on a more thorough examination of the subject property and on local costs, we do not need to decide which side is correct, It is enough to observe that the rezoning has definitely enhanced the value of the property.

Sewer and waste facilities capable of servicing an industrial area have been available only since 1973. Since that time limited construction within the industrial area has been completed. This is an area developing primarily from vacant land. It would be difficult for this court to rule that the development after the zoning changes has not progressed quickly enough. Industrial development certainly is occurring in this area. In that regard, a developer of a nearby project similar to that proposed by plaintiffs has a high vacancy rate and has terminated further construction although available land still exists. Under the circumstances of the present case defendant had the right to reject the requested rezoning of the subject property.

■■ Whether the subject property is classified as multifamily or as industrial, roads must be constructed since the property is "landlocked" without adequate access to major roadways. Moreover, the evidence as to the suitability of the property for either multifamily or for industrial use is conflicting in other respects. In such instances, the courts must acquiesce in the judgment of the village. *Trendel v. County of Cook* (1963), 27 Ill. 2d 155, 188 N.E.2d 668.

■■ Plaintiffs also contend that defendant is estopped from denying plaintiffs' application for rezoning. This argument is based on the actions of defendant's officials after Mr. Shefner had approached them with the proposed plans in 1972. Plaintiffs maintain that Shefner was encouraged to continue even though the officials knew that the property was part of the 1970 comprehensive village plan for an industrial area.

We view the actions of defendant's officials as proper and as affording plaintiffs a reasonable opportunity to present and to discuss their plans. Although the officials were encouraging, they did not indicate that the property would be rezoned to accommodate plaintiffs' plans. No formal action was taken by the Plan Commission or the Board of Trustees. Defendant's president warned of possible problems with roadways running through South Barrington. Defendant did not act positively or affirmatively in any manner which would induce plaintiffs to make expensive permanent improvements, thereby possibly invoking the doctrine of estoppel. The proposed plans were merely listened to, studied, and eventually rejected. It was not until later that any actual

rezoning occurred. See *Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 178 N.E.2d 358.

For the reasons stated, the judgment of the circuit court of Cook County dismissing plaintiffs' complaint is affirmed.

Judgment affirmed.

SIMON, P. J., and McGILLICUDDY, J., concur.