(No. 33750.—

CHICAGO CITY BANK & TRUST COMPANY, Trustee, *et al.*, Appellees, *vs.* THE CITY OF HIGHLAND PARK *et al.*, Appellants.

*Opinion filed September 25, 1956—Rehearing denied Nov 19, 1956.*

THOMAS H. COMPERE, Corporation Counsel, of Highland Park, (S. GROSSHANDLER, of counsel,) for appellant.

MAURICE J. NATHANSON, of Chicago, and PAUL C. BEHANNA, of Highland Park, (LEONARD J. BRAVER, of counsel,) appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Lake County which declared invalid certain provisions of the zoning ordinance of the city of Highland Park, as they apply to plaintiffs' property. The trial court certified that the public interest required a direct appeal to this court. The challenged provisions are those which govern intensity of use, the height of buildings and off-street parking facilities.

Plaintiffs' property is located at the northeast corner of the central business district in Highland Park, at the intersection of Sheridan Road and Park Avenue. It is improved with a building which contains six retail stores on the main floor and seven apartments on each of the second and third floors. The fourth floor is an attic area under a high mansard roof, which plaintiffs desire to convert into seven additional apartments. When the building was built in 1929, the elevator shaft, electrical circuits and rough plumbing were run up to the fourth floor.

The American Legion Hall and the Highland Park Woman's Club are located in the block to the north on Sheridan Road. North of these buildings is a public school with a tower rising higher than plaintiffs' building. Immediately to the east of plaintiffs' property is a two-story building occupied by doctors' offices and apartments. Beyond

this building is a residential area extending east about a mile to Lake Michigan. The central business district lies to the south and west of plaintiffs' property. Four blocks west and south is the city water tower, which rises to a height considerably greater than that of the plaintiffs' property.

Since 1926 the zoning ordinances of the city of Highland Park have continuously prohibited the erection or alteration of any building to exceed three stories or 45 feet in height. In 1928 the then owners of this property applied for a permit to erect a five-story store and hotel building. The denial of this application was affirmed by the Zoning Board of Appeals, which found that no practical difficulty or unnecessary hardship was involved. Thereafter, in 1929, the owners erected the present building, pursuant to a permit for the construction of a three-story store and apartment building. Plaintiffs are the trustee and the beneficiary of a trust which purchased the property in 1947.

In 1947, shortly before the plaintiffs purchased the property, the city enacted a new zoning ordinance which retained the three-story limitation. A comprehensive zoning survey preceded enactment of this ordinance. At that time the then owners urged the council to remove the limitation. After three public hearings the council determined that it was not in the best interest of the city to do so. In 1948 the council reaffirmed its judgment in this matter after a series of public hearings before the zoning committee of the city council, upon the written request of the plaintiff Reingold for a special permit to extend the use of the building in question. The committee report filed at that time recommended disallowance on the grounds that the sewers serving the building were inadequate for present use, and that the parking situation was acute in the area.

In addition to violating the three-story limitation, use of the fourth floor for apartments would violate the intensity of use provision of the ordinance. The premises in

question have a lot area of approximately 13,310 square feet, which is equal to 950 square feet per family for 14 families, or 634 square feet for 21 families. The zoning ordinance of 1926 required 950 square feet of lot area per family, and the ordinance of 1947 requires 1500 square feet of lot area per family. For a new building, the present ordinance would permit occupancy by nine families. Plaintiffs seek permission for occupancy by 21 families.

The ordinance also requires the maintenance of parking space to accommodate one car for each unit in a multiple dwelling on the lot or within 200 feet therefrom. Although there is some dispute on the point, it appears that the nearest off-street parking area available to tenants of the building is a public parking lot more than 500 feet distant from the premises.

The trial court entered a decree holding the ordinance invalid as to plaintiffs' property and ordering issuance of a building permit. Plaintiffs admit that the proposed alterations do not comply with the height and intensity of use limitations, but contend that there is adequate parking space within 200 feet. This contention is not supported by the evidence. The private parking lots of a nearby mortuary and theater are not available to the public. The municipal parking lot across the street from the theater does not permit overnight parking, as plaintiffs' tenants would require. The only other off-street facility in the area is the municipal parking lot more than 500 feet from the premises.

In a memorandum opinion the trial court stated that it could "see no applicability of any rule requiring a minimum amount of lot space for persons occupying the building * * * since the structure is located in the central business district and rules which might apply to residential structures would obviously not apply." This conclusion was erroneous. The statute which authorizes enactment of regulations governing intensity of land use is not limited to residential areas. (Ill. Rev. Stat. 1955, chap. 24, par.

73—1.) The ordinance expressly states that the minimum lot area requirements are to be the same in the central business district as in wholly residential areas. One of the purposes of such a regulation is to protect the public facilities from excessive use. In view of the heavy demands put on such public facilities as water mains, sewers and streets, by commercial users, restrictions upon intensity of use are no less necessary in central business areas than in wholly residential areas.

In its opinion the trial court held the three-story limitation arbitrary, unreasonable and confiscatory as to plaintiffs' property. Allowing the proposed alteration, the court said, would greatly enhance the value of plaintiffs' property without impairing the public health, comfort, safety and general welfare. In so holding the court stressed the fact that the overall height of the building would not be increased, and its exterior would not be altered. This holding, however, ignored the function of the three-story limitation as a regulation of the intensity of use of the premises. It is true that one of the purposes of height limitations is to assure adequate light and air to adjacent properties, but that is not their only function. The broader purpose of the city council in enacting this ordinance is clear from the fact that the limitation is expressed in number of stories as well as in number of feet.

"Where the proper authorities have adopted a zoning ordinance pursuant to a legislative grant, a presumption favoring its validity always obtains [citations]. One assailing the validity of such an ordinance as arbitrary and unreasonable * * * must prove by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action, that there is no permissible interpretation which justified its adoption or that it will not promote the safety and general welfare of the public." *First National Bank of Lake Forest* v. *County of Lake*, 7 Ill.2d 213, 225.

The plaintiffs attempted to overcome this presumption by the testimony of three witnesses: plaintiff Reingold, Evert Kincaid, a professional city planner, and Donald Anderson, a former manager of the property. Reingold testified that there was a serious shortage of rental housing units in Highland Park, particularly for many widows and elderly couples who would like to sell their large, old homes, if they could find other places to live; that these people ordinarily preferred accommodations as close to the shopping area as possible, and that allowing him to remodel the building as proposed would help meet the need he described.

Kincaid testified that the property was designed to be used in the proposed manner, and that it was practical to complete the building as proposed by plaintiffs; that the highest and best use of the property would be with completion of the fourth floor in connection with its present use; that the proposed alteration would have no adverse effect on the surrounding property, particularly since the exterior of the building would not be affected, and that the increased availability of rental housing ("We have young families who desire to rent a home or place to live and such facilities are not available") would help to meet a serious community need. He further stated that in his opinion "Highland Park had insufficient property zoned for multiple-family use in proper locations."

Anderson, the former manager of the building, testified that in his opinion the building was now worth about $275,000; that the proposed improvements could be made at a cost of about $40,000, and that they would increase the value of the building about $75,000 to $80,000; that while he was manager, the building was tenanted by 19 or 20 elderly persons, who caused no parking problems because most of them were too old to drive automobiles; that he assumed that the sewer facilities servicing the building were adequate, and that in his opinion the highest

and best use of the property would be with completion of the fourth floor as proposed by plaintiffs.

In our opinion this evidence wholly fails to prove that application of the ordinance to plaintiffs' property is arbitrary or capricious. No evidence was offered to show a more intensive use of property anywhere in the city than now exists on plaintiffs' property. The present ordinance would permit use of the property for nine apartments. Plaintiffs now have 14 apartments on the property, and would have 21 apartments under the proposed alteration. Nor did plaintiffs' evidence indicate any building of more than three stories in the entire city. The only structures which rise to a greater height are the ornamental tower of the public school and the city water tower. That the ordinance permits churches to have 75 foot steeples, and certain public or quasi-public buildings, such as hotels, hospitals, churches and schools to be erected to a height of 60 feet, does not establish discrimination.

The plaintiffs seek a privilege accorded no other person under this ordinance. Indeed, if plaintiffs were allowed to create the additional apartments by finishing off the fourth floor of their building, it is difficult to see how the limitations of the ordinance could fairly be enforced against any owner of property in the central business district. Plaintiffs, however, argue that a distinction exists between their property and other properties. The fourth story is already built, they say, and was designed to be finished off in the manner proposed.

We think that the attempted distinction is without substance. Plaintiffs' predecessors, in 1928, constructed the building pursuant to a permit to erect a three-story building, issued after a permit for a five-story hotel had been denied. Their action in erecting this building, and in taking substantial steps toward completing the fourth floor was gratuitous, and appears to have been taken in violation of the ordinance. The building is either a legally constructed

three-story building with an attic, or it was illegally constructed. The unnecessary and possibly illegal action of plaintiffs' predecessors affords no basis for now according to plaintiffs the exclusive privilege of owning the only four-story building in the central business section of Highland Park. If any hardship is involved, it was self-induced.

Although plaintiffs' witness Kincaid testified that "Highland Park does not have sufficient area zoned for multiple-family use in proper locations," he did not identify any deficiencies in the present zoning plan. The defendant attempted to rebut this testimony by showing that there are 30 acres of land zoned for multiple-family use, which are not now so used. The trial court sustained plaintiffs' objections to admission of this rebuttal evidence on the ground that considerations relating to other properties were not relevant in this proceeding, which concerned the use of an existing building. This ruling was erroneous. The existing zoning was clearly relevant when an alleged shortage of property zoned for multiple-family housing was being urged as a basis for voiding an intensity of use limitation. *Weseman* v. *Village of La Grange Park,* 407 Ill. 81.

It was further urged that the merchants would benefit by the increased business patronage of the people in the fourth floor of the building. To the extent that such tenants had automobiles and parked them in the street during business hours, the interest of the merchants would suffer. In any case, the factor was one to be weighed by the city council, rather than by the court. *First National Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d. 213.

The evidence shows that as early as 1925 the sewer servicing the plaintiffs' building was considered shallow and inadequate. There was testimony by the former city engineer that the mains servicing this property were installed in 1891 and are six inches in diameter; that State law now establishes eight inches as a minimum, and that in the residential area to the east of the building there has been trouble

with flooded basements. He testified that the load on the sewers averages 150 gallons per person per day, and that in his opinion adding seven additional apartments would seriously burden the system. The only evidence offered by plaintiffs was the testimony of the former building manager, Anderson, that while he was manager of the building, between 1946 and 1951, he had experienced no difficulties. That evidence does not, of course, meet the issue.

There was also considerable evidence of a serious parking problem in the immediate area. That evidence need not be stated in detail. It is sufficient to point out that unless some arrangement was made with the mortuary or the theater the automobiles of the prospective tenants would remain on the streets at least a part of the time. To the extent that they did, they would aggravate the already acute shortage of parking spaces.

The record as a whole shows a reasonable basis for the enactment of the ordinance and for the action of the city council in refusing to grant special permission to plaintiffs to complete the proposed alteration. The decree of the circuit court of Lake County is reversed, and the cause remanded to that court, with directions to dismiss the complaint.

*Reversed and remanded, with directions.*