GEORGE E. WEAVER, as Trustee under Trust No. 202 *et al.*, Plaintiffs-Appellees, *v.* ZONING BOARD OF APPEALS OF THE CITY OF PARK RIDGE, ILLINOIS *et al.*, Defendants-Appellants.

(No. 53024;

First District—October 23, 1970.

CRAVEN, P. J., dissenting.

Ancel, Stonesifer & Glink, of Chicago, (Louis Ancel, Ronald M. Glink and Howard J. Siegel, of counsel,) for appellants.

Warren L. Swanson, of Chicago, (Hubachek, Kelly, Rauch & Kirby, of counsel,) for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The Zoning Board of Appeals of the City of Park Ridge denied plaintiffs' application for a variance under a zoning ordinance which limited buildings in a commercial district to a height of 40 feet. Upon administrative review the circuit court reversed the decision of the Zoning Board and entered judgment granting such variance. Defendants appeal.

The property in question is located at the intersection of Touhy Avenue and Northwest Highway in the approximate center of the central business district of the city and is classified as "D-D" Commercial Zoning District under the ordinance. The classification at issue provides:

"No building hereafter erected or altered in the 'D-D' Commercial districts shall exceed forty feet (40 ft.) in height or three stories".

The zoning ordinance has been in effect since 1928 when the population was 4000. The present population is 40,000.

The property consists of 35,000 square feet of which 18,000 square feet is improved with a three story and basement building housing the Citizens Bank. There are 70 parking places. Two other buildings on the south end of the property which formerly housed a church and a restaurant are also used by the Bank.

The Bank commenced business on this location in 1929 with nine employees, and has now expanded its operations to 200 employees operating a full service bank with drive-in facilities, a safety deposit department and a trust department. The Bank acts as a depository for payroll taxes and receives income tax payments. The Bank has excavated beneath the parking lot for working space for employees, and occupies all the space in all the buildings for bank purposes, except two small offices for the Maine Township Assessor and the Maine Township Collector.

Plaintiffs applied for a variation from the forty foot height restriction to permit an addition of two stories which would raise the level of the main bank buildings to 54 feet, ten inches, and would increase the elevator shaft another thirty-three feet.

There is no detailed plat of the area in the record, but it appears that the subject property is surrounded by commercial buildings for several blocks, except that to the west is a park-like area covering a city reservoir. It also appears that the only exceptions to the forty foot limitation within several blocks of the subject property are the Park Ridge City Hall, 66 feet, the Pickwick Theatre, 42 feet with a tower extending to 96 feet, the Midstates Telephone Company, 88 feet, the Park Ridge Inn, 54 feet, measured at the lower level of a 12 foot grade, the Community Church with a steeple of 104 feet, and 1st Church of Christ Scientist, 50 feet. It does not appear under what circumstances these exceptions occurred, although some of them would be permitted under provisions for public buildings.

Mr. Clyde Borman, president of the Bank, testified that the facilities are so crowded that the Bank cannot continue to operate in the present location without additional office space.

Mr. Ralph H. Martin, a realtor, past president of Northwest Suburban Multiple Listing Service, member of the legislative Committee of the Illinois Association of Real Estate Boards, a graduate of Indiana University School of Business and a graduate of the Real Estate Institute in Chicago, stated that he was familiar with the downtown business area of Park Ridge, that he had examined the proposed expansion plans, and had made a study of the property at Touhy and Northwest Highway. He testified that the present value of the building, without expansion, is $750,000.00, if used as a bank. If it could not be used as a bank, its value is reduced fifty per cent. He stated that old bank buildings are a drug on the market. Older bank buildings such as this one have high ceilings and are not suitable for many other businesses. He stated that upward expansion was the logical course because it is necessary to preserve the maximum area for parking, and that elevation of the building by two stories would not produce a deteriorating effect on the neighborhood, but that having the bank move from the neighborhood would be very detrimental and even disastrous to the area. He gave an opinion that the proposed upward expansion of the building would add $250,000.00 to its value. In support of his opinion he stated that the existing exceptions to the height district limitation had no deteriorating effect upon the neighborhood. He stated that building over the parking area would reduce the required parking spaces by reason of necessary caissons and pillars.

Mr. C. A. Bostrom, project engineer for the proposed structure, testified that 92 parking spaces are required by ordinance for the proposed expanded facility, that this requirement could be met by building higher but could not be met if they built over the parking area.

Mr. Rolf C. Campbell, a city planning and zoning consultant for 15 years, employed by Tex Search, Incorporated, a Bachelor of Science in landscape architecture from Michigan State University with a Master's Degree in City Planning from the same school, also testified to taking courses in traffic engineering. He was employed in city planning by the City of Lansing, Michigan, and had a private consulting service. He testified to working with a hundred communities in planning. He testified to familiarity with Park Ridge, and with the proposed expansion plan. He gave his opinion that the proposed plan was best from the point of view of the Bank and the public. He compared creating additional basement space and expanding horizontally or vertically. In his opinion it would be better planning to leave the open area for parking and to expand the building two stories upward, than to close in the parking area. He also stated that the upward expansion would not alter the general character of the neighborhood.

Mr. Kenneth Gunsteens, a realtor and resident of Park Ridge since 1955, with a degree in marketing from the University of Illinois, a member of the board of directors of the Northwest Suburban Board of Realtors, testified to his familiarity with the downtown and residential areas of Park Ridge, as well as the proposed building expansion. He gave his opinion that the proposed expansion would have no detrimental effect on the surrounding territory, and would improve the parking facilities and traffic flow.

Mr. Bruce Buderus, an architect, a twelve year resident of Park Ridge, testified that in his opinion the proposed expansion would not have a deteriorating effect upon the surrounding area, but a beneficial effect. Mr. George L. Scharringhausen, Jr., owner of a local pharmacy, Mr. R. M. Sasser, a local businessman, Mr. Roger Moore, marketing manager of the local office of Reynolds Metal Company, and Mr. E. B. Stofft, a forty year resident of Park Ridge, all testified to familiarity with the area and the plan, and to their opinion that the proposed expansion would not have a deteriorating effect upon the area.

The record before the trial court and here includes the minutes of the several meetings of the Zoning Board concerning this application and the transcript of the testimony of witnesses, which we have summarized. Such are the records required by ch. 24, par. 11—13—3(C), Ill. Rev. Stat. 1965. No witnesses testified in opposition to the application.

Upon defendants' motion pursuant to ch. 110, par. 275(3), Ill. Rev. Stat. 1965, the trial court made findings of fact. Such included the finding that the evidence sustained the finding of practical difficulties and unique hardship in that the property, by reasons of unique circumstances, cannot yield a reasonable return under the limitations imposed,

and that the requested variance will not alter the essential character of the area. Such findings encompass the statutory test authorizing the variance. Ill. Rev. Stat. 1965, (ch. 24, par. 11—13—5). The court also found that the denial of variance was arbitrary, unreasonable and against the manifest weight of the evidence, that the plaintiffs would suffer irreparable damage and that the ordinance, as directed to the described property, was unconstitutional as not reasonably related to public health, safety or welfare.

■■ The fact that there is no testimony or other evidence opposing or rebutting plaintiffs' evidence does not, in itself, authorize reversal of the decision of the Zoning Board. The plaintiffs must satisfy the proof required under the ordinance and the statute. *River Forest Bank & Trust Co. v. Zoning Board*, 34 Ill.App.2d 412; 181 N.E.2d 1.

■■ Here, however, the plaintiffs produced substantial, positive evidence of facts which justified the trial court in finding that the plaintiffs had met the statutory test and that the Zoning Board had abused its discretion. Ill. Rev. Stat. 1965, ch. 24, par. 11—13—5.

There are unique circumstances affecting the use of the property by reason of its dimensions and shape, and the requirement of other municipal ordinances. The defendants do not contend against the expansion of the bank and its services, but only as to how it is to be done. They urged that it should be enlarged laterally rather than vertically, by constructing a building over its parking lot. There is substantial evidence that such is impossible in engineering terms if there is to be compliance with the ordinance requirements for off-street parking as the facility presently extends to the bounds of the premises. There is substantial evidence that the Bank has grown to be one of the largest non-metropolitan banks in the State, that its customer services have been greatly extended, and that the number of its employees has increased more than twentyfold since the Bank was started at this location. The evidence substantially reflects that the working space and area for the physical expansion of the Bank have been exhausted. There is evidence that the building has a market value for banking purposes of $750,000.00, but that such building is not adaptable for other commercial uses by reason of its design and manner of construction, and that its market value for other uses would be fifty per cent of the market value as a bank building. The same factors depreciate the rental value of the premises for commercial purposes.

Again, there is convincing testimony of a substantial number of persons who appear to be unusually well qualified to state an opinion that the proposed changes cannot alter the essential character of the loyalty.

The considerations of density of use which were concurrent with the

height limitations considered in *Chicago City Bank v. Highland Park*, 9 Ill.2d 364; 137 N.E.2d 835, cited by defendants, have no parallel in this record. As noted by the trial court and in the testimony before the Zoning Board, all of the considerations of density use would be present if the Bank expanded horizontally as permitted under the ordinance.

■■ In addition to the transcript of evidence before the Zoning Board demanded in the complaint, the defendants filed a pleading entitled "Answer". The Administrative Review Act, ch. 110, par. 272(b), Ill. Rev. Stat. 1965, provides that the pleadings upon administrative review shall consist of the complaint and the record of the administrative proceedings under review which shall constitute the answer, and that there shall be no other pleadings unless required by the court. Such pleading was properly stricken upon motion of plaintiffs. Attached to such "answer" and designated as an exhibit was a writing purporting to be "Findings" of the Zoning Board. This was also stricken and defendants urge reversible error. Examination of the purported "Findings" of the Zoning Board discloses that they are undated and unauthenticated in any fashion. The last page upon which might appear some appropriate certification has been trimmed in half in an unusual and unexplained way.

We have examined the "Minutes" of the Zoning Board which were filed in the trial court subsequently to the striking of the answer and the exhibit. The minutes disclose that on May 12, 1967, the Zoning Board heard the testimony of the witnesses as set out in the transcript filed, and immediately thereafter in "executive session" voted to deny the application. The minutes filed do not reflect the consideration, preparation or filing of any "Findings" prior to the denial of the petition, or at any other time. Under the provisions of the Administrative Review Act hereinabove cited, the record of the proceedings of the administrative entity is the answer to the complaint and "Findings" not contained in such record cannot be reviewed.

Upon this record it appears that the Zoning Board did not prepare or make "Findings" as a part of the record of its proceedings, or consider such in reaching its decision to deny the application of the plaintiffs. Defendants have made no attempt, so far as the record shows, to complete the record of its proceedings, if such in fact exist. In *Strohl v. Macon Co. Zoning Board*, 411 Ill. 559; 104 N.E.2d 612, the Supreme Court considered the language of the Administrative Review Act concerning technical errors before the administrative body, ch. 110, par. 275(2). The Court said:

"If the board failed to keep a record of its proceedings as required, we consider their failure to be beyond the scope of a technical error

and that it would work a substantial injustice on appellees if the continued delay in using their property as they choose can be attributed to such failure."

■■ Upon the evidence in the record before us, it is manifestly unjust at this time to permit defendants to urge that the case should be reversed and remanded for their own failure to make and file the record which they now urge is required.

There being substantial evidence supporting the statutory grounds for granting the variance, it is not necessary to review the court's findings upon the constitutionality of the ordinance.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

SMITH, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

As I view this record, serious issues of procedure and substance require a reversal. Accordingly, I must dissent from the views of my colleagues.

Turning first to two procedural problems, the complaint in this case sought administrative review and further alleged the unconstitutionality of the height limitation in the Park Ridge zoning ordinance. After the filing of the complaint, the named defendants, acting pursuant to the Administrative Review Act, filed the record of proceedings before the Zoning Board of Appeals as their answer. At that time no findings were filed. At a later date the defendants filed what was designated as an answer to the complaint for administrative review and that answer included as an exhibit certain findings of the Zoning Board of Appeals. On motion of the plaintiffs, the trial court entered an order striking the answer of the defendants and all exhibits attached thereto. While it may be that the trial court intended to strike the pleading to which the findings were attached, the order is susceptible of an interpretation that he struck the "answer" as that term is used in the Administrative Review Act.

This cause was then heard on the record, and ultimately an order was entered reversing the Zoning Board of Appeals and holding that the Zoning Board should grant a variance to permit the plaintiff to erect a building 55 feet in height with an elevator and mechanical tower to a height of 88 feet. The court further held the height limitation to be unconstitutional. It does not appear that the constitutionality of the zoning ordinance was an issue before the Zoning Board and, indeed, the entire proceedings before the Zoning Board seem to have been predicated upon

the validity of the ordinance, the controversy centering solely upon the plaintiffs' right to a variance.

In *Howard v. Lawton* (1961), 22 Ill.2d 331, 175 N.E.2d 556, the court did hold that in an administrative review action, the court may, nonetheless, consider constitutional issues if the whole record discloses that there is a fairly debatable question whether the zoning ordinance is arbitrary and unreasonable.

As I understand it, where there is a fairly debatable question, the presumption in favor of the validity of the zoning ordinance must prevail and one who undertakes to attack that ordinance has the burden of overcoming that presumption by proving with clear and convicing evidence that the ordinance as applied to him is arbitrary and unreasonable. Mere difference of opinion or proof that the property could reasonably be classified otherwise is not sufficient. See: *Bennett v. City of Chicago* (1962), 24 Ill.2d 270, 181 N.E.2d 96; *Exchange Nat'l Bank of Chicago v. Cook County* (1962), 25 Ill.2d 434, 185 N.E.2d 250; *Trendel v. Cook County* (1963), 27 Ill.2d 155, 188 N.E.2d 668.

In this case, the complaint alleged that the plaintiff Weaver, as trustee, owned the premises and that the bank, as plaintiff, operated a bank thereon. There is testimony in the record by one C. A. Bostrom that the Bankers Life and Casualty Company is the beneficial owner of the property and the building. At one point the bank is referred to as the owner. The nature and extent of the bank's interest are not otherwise established.

Thus, it seems to me that even under the doctrine of the *Lawton* case, the one who attacks a zoning ordinance, either under administrative review or administrative review coupled with alleged constitutional infirmities, has a greater burden of establishing his interests and the deprivation of his rights beyond that which this record shows.

Section 11—13—4 of ch. 24, Ill. Rev. Stat. 1967, provides that variations from existing zoning ordinances may be permitted by the board of appeals when it is shown (1) that the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations, (2) that the plight of the *owner* is due to unique circumstances, and (3) that the variation, if granted, will not alter the essential character of the locality. It is uncontroverted that the burden is upon the plaintiffs to establish by clear and competent evidence the existence of all three statutory conditions precedent to a variance. See *Brown v. Board of Zoning Appeals of Rock Island* (2d Dist. 1959), 21 Ill.App.2d 273, 157 N.E.2d 685.

In this case, there is no showing whatsoever that the property cannot

yield a reasonable return, nor is the record sufficient even to establish what the existing return is. Apparently, legal title is held by the trustee and the beneficial owner is the Bankers Life and Casualty Company. Any plight shown by this record is the plight of the Citizens Bank and Trust Company and the unique circumstances shown establish its need for more space. Since the nature and the extent of the bank's interest in the subject premises are neither alleged nor proved, we cannot conclude that the bank's hardship is the plight of the owner, and we certainly cannot conclude that the finding of the Board of Appeals is contrary to the manifest weight of the evidence.

The third prerequisite for a variance is the necessary determination that the variance, if granted, will not alter the essential character of the locality. This record does not establish that condition precedent to a variance.

The answer to the complaint for administrative review denied that there was any building in excess of the 40-ft. height limitation in close proximity to the subject property. The plaintiffs assert in this court that a variance permitting them to build the contemplated addition would not alter the essential character of the locality. We are not referred to any specific evidence as to location and height of buildings except by reference to the answer and findings that were stricken. By reference to these documents, it is indicated that the only structure in excess of the height limitation within a two-block radius of the subject property is an ornamental tower on the Pickwick theater and that that building was constructed prior to the effective date of the ordinance. Other buildings located farther away may offend against the height limitation, as do some churches and the city hall. In this connection, it should be noted that here, as in *Chicago City Bank & Trust Co. v. City of Highland Park,* 9 Ill.2d 364, 137 N.E.2d 835, *cert.* denied, 353 U.S. 922, 77 S.Ct. 681, 1 L.Ed.2d 719 (1957), the ordinance excepts from its application churches and certain public or quasi-public buildings. In that case, the court held that such an exception or distinction did not establish discrimination.

In any event, the plaintiffs had the burden of establishing that the sought variation would not change the essential character of the area, and they did not satisfy that burden. That burden cannot be shifted to the municipal authority nor to the Zoning Board of Appeals. *River Forest State Bank & Trust Co. v. Zoning Board of Appeals of Maywood* (1st Dist. 1962), 34 Ill.App.2d 412, 181 N.E.2d 1.

On the basis of this record, the Zoning Board of Appeals was correct in denying the variance and the circuit court was in error in reversing that decision. If the evidence is insufficient to satisfy the statutory re-

quirement for a variance, it is likewise wholly insufficient to establish the constitutional infirmities found by the circuit court. The finding of the circuit court that the ordinance was unconstitutional could only have been based upon the hearing before the Zoning Board of Appeals. For these reasons, the judgment of the Circuit Court of Cook County should be reversed.