CLIFFORD ARMOUR *et al.*, Plaintiffs-Appellees, *v.* ROBERT A. MUELLER, Zoning Administrator, *et al.*, Defendants-Appellants.

Fifth District No. 74-368

Opinion filed February 4, 1976.

24

Sprague, Sprague & Ysursa, of Belleville (John R. Sprague, Sr., and N. Dean Nester, of counsel), for appellants Roy A. and Kathleen M. Shoemaker.

Kassly, Weihl, Bone, Becker & Carlson, of Belleville (Robert E. Becker and Barry D. Dix, of counsel), for appellants Robert A. Mueller, Zoning Board of Appeals of the city of Fairview Heights, and the city of Fairview Heights.

Terry J. Neubauer, of Fairview Heights, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The several defendants in this case appeal the order of the circuit court of St. Clair County, setting aside the decision of the Fairview Heights Zoning Board of Appeals granting Roy and Kathleen Shoemaker a variance for the erection of a mobile "modular home."

On March 17, 1974, the Shoemakers filed an application with Robert Mueller, Zoning Administrator of the City of Fairview Heights for a

building permit to enable them to place a "modular home" on a parcel of land at 32 South Ruby Lane. The lot has 100-foot frontage on Ruby Lane and is 260 feet deep. On March 29, Mueller refused to issue the permit. The Shoemakers filed an application for a variance with the defendant Zoning Board of Appeals on April 1. On April 3 the Board published a notice in the Fairview Heights Journal of a public hearing to be held April 23 to consider the variance request of the Shoemakers. Written notice of the hearing was sent to Mr. and Mrs. Shoemaker on April 4.

At the hearing on April 23, the Board stated that it could not take final action on Shoemakers' request. The Board had received an advisory report on the application from the Fairview Heights Planning Commission but expected another report and had not yet received it. However, notice had been sent to the Shoemakers and in addition, although not sent by the Board, Shoemaker testified that he had, in compliance with an informal Board rule, notified property owners surrounding his lot of the hearing and its subject. He received written approval of his proposal from those neighbors not present. Those who opposed the issuance of the variance, including the appellees, were in attendance.

The Shoemakers wanted to place the "modular home" on the rear of their property at 32 South Ruby Lane. The problem giving rise to this appeal was that another building, the residence of Mr. Shoemaker's mother, was already located on the lot. Shoemaker testified that he had first sought approval from the defendant, Mueller. Apparently on his advice and that of other city officials, Roy Shoemaker subdivided the lot by jointly, with his mother, conveying part of the property to himself and his wife and then sought a variance from the city's zoning requirement that lots so zoned have a minimum of thirty feet frontage. The frontage requirement was the Board's main concern.

Several neighboring property owners testified on behalf of the Shoemakers. They said he had lived with his mother on the property for some time and was generally liked. The "modular home" was described as being good-looking when assembled, indistinguishable from a standard house. One of the neighbors noted that a prior resident in the area had apparently violated the zoning ordinance by establishing a commercial auto body repair shop. The city had not complained then and the neighbor urged that the Board should grant the variance to Shoemaker who at all times attempted to follow the law. For some time prior to the hearing, Mr. Shoemaker had helped take care of his mother and the property. The Shoemakers, Mr. Shoemaker's mother, and a few other witnesses thought this was a strong reason for the Board to grant a variance.

The opponents, surrounding property owners, as well, did not contradict the proponents' testimony regarding Mr. Shoemaker's popularity, the appearance of the "modular home," or his motivation for moving to the lot. Their sole objection was that even though the lot had been "subdivided," there would be two principal buildings on one lot, contrary to the Zoning Ordinance. They felt that if this were allowed in one case, it would be allowed elsewhere in the neighborhood.

At the conclusion of testimony, the case was continued for a week to await the Planning Commission's advisory report. The Board's secretary was directed to make sure the Shoemakers and their neighbors were notified.

The second hearing, a special meeting, was held on April 30. Testimony both for and against the proposed variance was taken, but the record on appeal does not contain a transcript of the proceedings. In his brief, the appellant Mueller lists the witnesses who he says testified. Among them was Clifford Armour. The appellees do not dispute the fact that a hearing was held on April 30.

On May 28, the Board held a regular meeting. The Planning Commission's advisory report was read, recommending that the proposed variance be denied. The reasons given were the Shoemakers' failure to complete a standard questionnaire, two principal buildings would be on one lot in violation of an ordinance, the lot was allegedly subdivided without city approval in violation of an ordinance, the subdivided lot would not have sufficient frontage in violation of an ordinance, the proposed use was not compatible with the neighborhood and no proper connection with the city sewer was shown. The Board chose to ignore the report, stating that its sole concern was whether a variance from the frontage requirement should be granted. On that issue, the Board voted four in favor with one abstention to grant the variance for so long as Mr. Shoemaker needed to use the lot as his home. There was a brief discussion of the "hardship" to the Shoemakers caused by the frontage requirement, but there were no formal findings of fact with regard to this issue or any other surrounding the granting of the variance.

Following the allowance of the variance, the plaintiffs sought judicial review of the Board's determination. The court, after a hearing, issued an order setting aside the Board's action.

The court first found that the Zoning Board of Appeals failed to comply with sections 7.03 and 7.05(c) of the Zoning Ordinance of Fairview Heights in that notice was not given to all interested parties and the plaintiffs of the April 23 meeting. Section 7.03 provides that "The Board shall select a reasonable time and place for the hearing of the appeal

and give due notice thereof to the parties * * *." The specific type of notice required in the instant case where a use variance is sought is described in section 7.05(c):

"Notice and Hearing. No action of the Board of Zoning Appeals shall be taken on any case until after notice has been given that public hearing has been held as follows:

(1) A notice of the time and date of said hearing and a brief summary of explanation of the subject matter of the hearing shall be posted in three prominent places within the city or shall be published in the newspaper of general circulation within the village within at least fifteen (15) days prior to the hearing date.

(2) Said notice in the foregoing Paragraph (1) shall be sent by first class mail, at least 10 days prior to the hearing, to the applicant and owners of property in question in cases where a use variance or special permit is applied for * * *."

Subsection (1), above, was complied with by publication of adequate notice in the Fairview Heights Journal on April 3. Subsection (2) was complied with at least with respect to the Shoemakers by the sending of written notice to the Shoemakers on April 4. The trial court, however, found that the ordinances were violated because "notice was not given all interested parties and the plaintiffs" of the meeting on April 23. Neither ordinance in terms requires notice be given to all interested parties. Section 7.03, the general provision, merely requires notice to the "parties." Section 7.05(c) requires notice to the "applicant and owners of property in question."

■■ We need not decide whether the ordinances required that notice be given to all interested parties because, assuming that that was necessary, notice in fact was given to surrounding property owners and others. The Board did not itself give notice, but Shoemaker did. He stated that he personally notified surrounding property owners of the hearing and its subject matter. Moreover, other persons who might be considered interested parties were notified by publication pursuant to section 7.05(c). The appellees do not argue that any interested parties, proponents or opponents, were thereby prevented from attending the meeting on April 23 or were in any way prejudiced by not receiving notice from the Board. Then too, the notice appellees claim was not given is not required by statute or ordinance, nor was it even an adopted rule of the Zoning Board of Appeals. It appears that it was merely the practice of the Zoning Board of Appeals to require the notice appellees complain is lacking. The waiver of their additional notice requirement by the

Zoning Board of Appeals coupled with the appearance of several of the neighbors to the property in question demonstrates that appellees were not prejudiced by the proceeding, especially where the notice required by the ordinance was in fact given. In addition, defects in notice may not be raised by parties who have actual notice of the meeting, fail to object to the alleged defect at the meeting, and show no prejudice from the alleged defect. (Annot., 38 A.L.R. 3d 167, §5 (1971); 3 Anderson, American Law of Zoning §16.23 (1968).) Accordingly the trial court erred in finding that the Board failed to give proper notice for the April 23 meeting.

■■ The court found that the Board failed to allow all interested parties the right to present evidence or testify at the Board's meeting on May 28, in violation of the Board's established procedure and section 7.03 of the Zoning Ordinance. It was the Board's procedure to allow the applicant and concerned neighbors to testify concerning the granting of variances. At the meeting on April 23, this was done. Shoemaker had notified the neighbors and several were present both for and against the variance. The record shows that all were allowed to fully explain their feelings about the proposed variance. The appellee, Clifford Armour, was present and testified. All who were present were notified of the Board's intent to hold a special meeting on April 30 at which time the Board said it would take more testimony and would have the Planning Commission's advisory report. The record indicates that the April 30 meeting was held but a transcript of proceedings is not in the record. The appellant Mueller claims in his brief that testimony was taken and that Armour, among others, testified. In his brief the appellee disclaims all knowledge of what happened at the meeting on April 30. At the May 28 meeting, the Chairman of the Board stated that at the "last meeting" the Board had decided to postpone its decision "until this meeting" when the Board would have the advisory report and that no further testimony would be taken. The appellee argues that the "last meeting" referred to was that of April 23. Considering the fact that on April 23 the Board had announced it would take more testimony on April 30, and since the meeting was held, we think the chairman's remarks logically refer to the meeting held on April 30. While it could be inferred from the statement that in the Board's judgment, sufficient testimony had been taken in the previous two meetings, we decline to accept this inference in the face of an incomplete record. On the other hand, the trial court was not justified in treating the hearing as if it never took place. Under the Administrative Review Act, the trial court "may affirm or reverse the decision in whole or in part." (Ill. Rev. Stat., ch. 110, par. 275.) It may also:

"(b)  *  *  *  make any order that it deems proper for the amendment, completion or filing of the record of proceedings of the administrative agency." (Ill. Rev. Stat., ch. 110, par. 275(b).) We do not understand how the trial court could have properly adjudicated this issue without a transcript of the April 30 meeting. Absent this, the court's ruling was improper. *Strohl v. Macon County Zoning Board of Appeals,* 411 Ill. 559, 104 N.E.2d 612; *Appel v. Zoning Board of Appeals,* 120 Ill. App. 2d 401, 257 N.E.2d 9; *Weaver v. Zoning Board of Appeals,* 130 Ill. App. 2d 1052, 264 N.E.2d 758.

■■  The court next found that the defendants Roy and Kathleen Shoemaker failed to legally subdivide the lot according to section 4.04 or section 6.3 of the Fairview Heights Zoning Ordinance. On April 8, 1974, Margaret Shoemaker and Roy Shoemaker conveyed by warranty deed part of the lot to Roy Shoemaker and Kathleen Shoemaker. There is no section 6.3 of Ordinance 77, the Fairview Heights Zoning Ordinance. The court apparently was referring to section 6.3 of Ordinance 38, the city's Subdivision Ordinance. The appellants note that the division of the lot does not come within the Plat Act, the Shoemakers having complied with the exemption of section 1(b)9 (Ill. Rev. Stat., ch. 109, par. 1(b)9). The appellants argue that in light of the exemption and their compliance with the statute, the Subdivision Ordinance of the City of Fairview Heights was not intended to cover the division of the lot. The appellees argue that the Subdivision Ordinance was intended to cover such a division. They point to the enabling statute of the Municipal Code and the definition of "subdivision" found in section 2.2 of the ordinance:

"Prerequisite to recording. The corporate authorities may provide, by ordinance, that any map, plat, or subdivision of any block, lot, sublot, or part thereof, or of any piece or parcel of land, shall be submitted to the corporate authorities, or to some officer to be designated by them, for their or his approval. In that case no such map, plat, or subdivision shall be entitled to record in the proper county, or have any validity until it has been so approved. If any municipality has adopted a subdivision ordinance pursuant to Division 12 of Article 11 of this code, as heretofore and hereinafter amended, all subdivision plats shall be submitted for approval and approved in the manner provided in such ordinance. Until approved by the corporate authorities, or such officer designated by them, no such map, plat or subdivision plat shall be entitled to record in the proper county, or have any validity whatever." Ill. Rev. Stat., ch. 24, par. 11—15—1.

"Subdivision: (1) The division of land into two (2) or more lots of parcels for the purpose of either immediate or future sale,

rental or building development or use(s) other than agricultural use or production    *   *   *. Excluded from this definition is:    *   *   * Division and distribution of land pursuant to law or court order. The term 'subdivision' shall also include re-subdivisions of land or lots."

Taken literally, it would appear that in order to divide the lot in question, the Shoemakers would have to fully comply with the extensive requirements of the Subdivision Ordinance. If, in fact, the ordinance is to be so interpreted, virtually every conveyance of land would require submission and approval of a plat. It is axiomatic that in the interpretation of statutes and ordinances, courts should avoid absurd results. Legislative enactments should be interpreted in a common sense manner according to the perceived intent of the drafting authority and in the context of the whole enactment. As noted above, the Shoemakers are exempted from the requirements of the Plat Act (Ill. Rev. Stat., ch. 109). This court has stated that its purpose is "to require the submission of plats to governmental approval to insure that adequate provision has been made for streets, alleys, parks, and other public facilities indispensable to the particular community affected. [Citation.]" (*Gricius v. Lambert*, 7 Ill.App.3d 716, 720, 288 N.E.2d 496, 499.) Notwithstanding the extremely broad language of chapter 24, section 11—15—1, and the definition of "subdivision" in the ordinance, it is only reasonable to assume that the statute contemplated and the ordinance was enacted with a similar purpose in mind. It is patently unreasonable to assume that Fairview Heights intended that every division of every parcel of land, regardless of its size, necessitates the filing and approval of a plat. The Shoemakers' lot has a 100-foot frontage on Ruby Lane and is 260 feet deep. While the subdivision ordinance may have been intended to cover larger lots, the ordinance was not intended to cover the subject property in this case, which was divided between co-owners for purely private purposes.

■■ The court found that the Shoemakers had not complied with sections 4.04, 4.07 and 4.10 of the Zoning Ordinance. Section 4.04 prohibits the division of improved lots unless all improved lots resulting from the division conform with all the applicable regulations of the zoning district in which the property is located. The court found that there existed two principal buildings on one lot in violation of section 4.08 and that one of the defendants' divided lots did not have the frontage required by section 4.10. Obviously the court's finding of a violation of section 4.08 rested on the premise that since the Subdivision Ordinance had not been complied with, there had been no division of the lot. Thus, there

then existed two principal buildings on the undivided lot. In view of our holding that the subdivision ordinance was inapplicable, there was a valid division of the lot and only one principal building was on each lot. The objection that section 4.10 was violated must similarly be overturned. The Shoemakers after having divided their lot were not in compliance with the frontage requirement of section 4.10. Therefore, they sought and received a variance. The variance was the whole purpose for the proceeding before the Zoning Board of Appeals. The fact that they were not in compliance with the Zoning Ordinance, sections 4.04 and 4.10, before they received a variance from the latter certainly does not constitute a violation of the Zoning Ordinance.

The court's last finding states that the Zoning Board of Appeals failed to show that the granting of a variance to the Shoemakers for the purpose of erecting a mobile home was in harmony with the purpose and intent of section 1.02 of the Zoning Ordinance and will not be injurious to the neighborhood or otherwise detrimental to the public welfare. Section 1.02 outlines the general purpose of the Zoning Ordinance: To protect the character and stability of neighborhoods, to prohibit uses incompatible with the character of specified zoning districts, to prevent overcrowding, to conserve the taxable value of land and buildings and to eliminate nonconforming uses adversely affecting the character and desirable development of the zoning districts. In addition, appellees argue that the Board's decision to grant the variance was made without the requisite findings of fact, citing section 11—13—4 of the Illinois Municipal Code (Ill. Rev. Stat., ch. 24, par. 11—13—4) and the Fairview Heights Zoning Ordinance, section 7.04(b)(1), (2) and (3).

■■ From our view of the record, it appears that the Board was aware of the requirements of the statute and ordinance and that there might have been sufficient evidence to support the Board's decision to grant the variance. The Board, however, failed to make the necessary findings of fact as required by the statute and ordinance. Under the circumstances, we feel that justice will best be served by remanding this case to the Zoning Board of Appeals for another hearing. At the hearing the Board should issue proper findings of fact in support of their decision. See *Sanderson v. De Kalb County Zoning Board of Appeals*, 24 Ill. App. 3d 107, 320 N.E.2d 54; *Reinhardt v. Board of Education*, 61 Ill. 2d 101, 329 N.E.2d 218; *Reichard v. Zoning Board of Appeals*, 8 Ill. App. 3d 374, 290 N.E.2d 349; *Appel v. Zoning Board of Appeals*, 120 Ill. App. 2d 401, 257 N.E.2d 9.

For the foregoing reasons, the order of the circuit court is reversed and the cause is remanded for hearing before the Zoning Board of Ap-

peals of Fairview Heights. *Columbia Quarry Co. v. Department of Revenue,* 34 Ill. 2d 46, 213 N.E. 2d 497.

Reversed and remanded with directions.

JONES and CARTER, JJ., concur.